**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X    Case No.

HANNAH KERIN,

                              Plaintiff,    **<u>COMPLAINT</u>**

        - against -

                                       **PLAINTIFF DEMANDS**
                                       **A TRIAL BY JURY**

THE RELATED COMPANIES, L.P., EQUINOX
FITNESS, and ANDRE FIGUEROA, Individually
and in his official capacities,

                             Defendants.

---------------------------------------------------------------------X

      HANNAH KERIN, ("Plaintiff"), by and through her attorneys, PHILLIPS &

ASSOCIATES, Attorneys at Law, PLLC, against THE RELATED COMPANIES, L.P. ("TRC"),

EQUINOX FITNESS ("EQUINOX"), and ANDRE FIGUEROA ("FIGUEROA") (collectively,

"Defendants"), alleges upon knowledge as to herself and her own actions and upon information

and belief as to all other matters as follows:

### <u>NATURE OF THE CASE</u>

1.     Plaintiff complaints pursuant to the discrimination and retaliation provisions of the

      discrimination provisions of **<u>The Americans with Disabilities Act of 1990</u>**, <u>42 U.S.C. §</u>

      12101, *et seq*. ("ADA"); **<u>Title VII of the Civil Rights Act of 1964</u>**, 42 U.S.C. § 2000 e-2

      et seq. ("Title VII"), The **<u>New York State Executive Law</u>** § 296, *et seq.* ("NYSHRL"),

      the **<u>New York City Human Rights Law</u>** ("NYCHRL"), Title 8, NYC Admin. Code sec.

      8-107 et seq.,  and seeks damages to redress the injuries Plaintiff has suffered as a result of

      being **<u>discriminated and retaliated against</u>** by her employer on the basis of her disability,

      and gender.

2.     Plaintiff also brings this action against Defendants pursuant to the **<u>Fair Labor Standards</u>**

**Act**, 29 U.S.C. § 201, et seq. ("FLSA") and the **New York State Labor Law**, Articles 6 and 19 ("NYLL") for failure to make timely payment of wages and failure to pay minimum wages for all hours worked.

## JURISDICTION AND VENUE

3.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000(e), *et seq*.

4.   The Court has supplemental jurisdiction over all state and city law claims pursuant to 28 U.S.C. §1367.

5.   Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## PROCEDURAL PREREQUISITES

6.   Plaintiff timely filed a complaint, upon which this Complaint is based, with the United States Equal Employment Opportunity Commission ("EEOC").

7.   Plaintiff received a Notice of Right to Sue from the EEOC, dated August 17, 2022, with respect to the instant charges of discrimination.  A copy of the Notice is annexed to this Complaint.

8.   This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

9.   At all relevant times herein, Plaintiff was and is a resident of the State of New York. She was and is a "person" and "employee" entitled to protection as defined by the ADA, Title VII, the FLSA, the NYLL, the NYSHRL and the NYCHRL. Plaintiff is in a protected class with respect to the ADA, Title VII, the NYSHRL and the NYCHRL.

10.   Defendant, The Related Companies, L.P., ("TRC") is, upon information and belief, a duly constituted New York Limited Partnership with its principal place of business located at 30 Hudson Yards, New York, NY 10001.  TRC is an "employer" within the meaning of the statutes invoked hereunder.

11.   Defendant Equinox Fitness ("Equinox"), is upon information and belief, a wholly owned subsidiary of Defendant TRC, and is a multistate chain of health and fitness clubs.  Equinox is an "employer" within the meaning of the statutes invoked hereunder.

12.   Additionally, Defendant Equinox's qualifying annual business exceeded and exceeds $500,000.00 and Defendant was and is engaged in interstate commerce within the meaning of the FLSA.

13.   Defendant Andre Figueroa ("Figueroa") is a Personal Training Manager employed by Defendants.  Figueroa had the authority to supervise Plaintiff and to affect the terms and conditions of Plaintiff's employment.

## MATERIAL FACTS

14.   On or about May 17, 2021, Plaintiff began working for Defendants as a Tier 2 Personal Trainer. Plaintiff underwent onboarding and following same was assigned to the Equinox facility located at 10 E. 53rd Street, New York, New York.

15.   Throughout Plaintiff's employment with Defendants, her performance met or exceeded Defendants' reasonable expectations.

16.   Plaintiff was paid an hourly rate of $15.00 per hour for floor hours and $32.00 per hour for personal training sessions.

17.   Plaintiff's direct supervisor at Equinox was Defendant Andre Figueroa ("Figueroa"), a Personal Training Manager.

18.   From the first day of her employment at Equinox, Defendant Figueroa repeatedly subjected Plaintiff to inappropriate and harassing comments about her body and personality.

19.   For example, Figueroa inappropriately judged and remarked to Plaintiff about her hair style, her body fat composition, and her shyness.

20.   Defendants required Plaintiff, as part of her job, to work out regularly while at Equinox's premises. Plaintiff was reprimanded on several occasions by Defendant Figueroa for a week when she did not work out and when she would rest in between sets. However, similarly situated male colleagues were not subjected to such treatment.

21.   Because working out was required of Plaintiff as part of her job, following the above reprimand, Plaintiff clocked in prior to working out at Equinox.  Plaintiff was then reprimanded again by Defendant Figueroa for clocking in and Defendants indicated that she was expected to fulfill this part of her job without being paid.

22.   Following a period of onboarding, Plaintiff began working at the 53rd Street Equinox location on or about May 24, 2021.

23.   On numerous occasions, Plaintiff began to notice that Figueroa repeatedly would scratch his genitals each time he engaged in conversation with Plaintiff.

24.   On or about May 26, 2021, Figueroa called Plaintiff into his office with the door closed and asked her what her favorite television show was. When Plaintiff told him it was "The Handmaids Tale" Figueroa then engaged in a lengthy discussion about rape culture. Figueroa's remarks made Plaintiff uncomfortable, as she was alone in the room with him and feared that she would be fired if she left the room.

25.   Plaintiff has a history of anorexia nervosa, of which the Defendants were made aware during Plaintiff's onboarding process. Namely, when Defendant Figueroa performed the

equitfit on Plaintiff, she advised him that she could not do the in-body measurements. In fact, Defendant Figueroa joked about Plaintiff's hesitation to have her measurements taken due to her anorexia nervosa to other trainers in an effort to humiliate her.

26.  Shortly thereafter, Defendant Figueroa mentioned to Plaintiff that perhaps the front desk employee quit because the results of his in-body measurements upset him similarly to how Plaintiff's results upset her and started laughing.

27.  Figueroa repeatedly made unwelcome and inappropriate inquiries as to what Plaintiff was eating. Such inquiries were an actual or potential triggering factor in Plaintiff's condition.

28.  Figueroa and Amanda Bucks, a Personal Training Manager from another Equinox location, subjected Plaintiff to discrimination and harassment with regard to her appearance. Specifically, Defendant Figueroa and Bucks told Plaintiff that her hair was "a mess" when similarly situated male employees with unkempt hair were not subjected to such comments and criticism.  Plaintiff was also told that she "smelled" and was told by Bucks (in an insinuation about Plaintiff's weight) that she would have to "dress and look the part" of a trainer.

29.  On or about July 15, 2021, after Plaintiff informed Defendant Figueroa that her personal training client had not shown up for a session, Figueroa made further inappropriate remarks to the effect that women have "wild sex," insinuating that is why Plaintiff's client did not show up for the training session.

30.  On or about July 21, 2021, Defendant Figueroa ordered Plaintiff to lift and organize heavy weights despite Plaintiff advising him that her injury restricted her from lifting heavy weights.  Nonetheless, Defendant Figueroa further insisted that Plaintiff lift the heavy weights despite knowledge of Plaintiff's injury and restriction.

31.    Approximately a week later, Plaintiff injured her back while lifting a weight of 100 pounds. Due to Defendant Figueroa's conduct, Plaintiff feared losing her job if she reported the injury or left work to seek medical attention.

32.    On August 1, 2021, Plaintiff was forced to seek medical attention at the emergency room for her injury.  The emergency room advised Defendants of Plaintiff's injury and Plaintiff was informed that that her injury was a possible muscle injury that required her to see an orthopedic surgeon.

33.     Following her emergency room visit, Plaintiff e-mailed Defendant Figueroa in confidence and requested, as an accommodation of her injury, that she not be required to lift weights, but that she wanted to come in for her training sessions and equifits.

34.    Plaintiff went to work on August 2, 2021 but walked in a skewed position as a result of her injury. Defendant Figueroa was present along with another employee and began discussing Plaintiff's confidential medical condition. The other employee made an inappropriate and harassing remark to Plaintiff, to the effect that she had "tons of dog fur" on her butt.

35.    On or about August 1, 2021, Plaintiff e-mailed Defendant Figueroa a medical note recommending that from August 2-5, 2021, she refrain from lifting heavy weights until she was able to consult with an orthopedic surgeon.

36.    In response to the note, Defendant Figueroa made further harassing comments to Plaintiff regarding her injury and her workers compensation claim, asking her if she was sure she didn't get hurt in aerial silks, why she didn't just use her health insurance for her injury, and why she was making this so difficult.

37.    On August 5, 2021, Defendant Figueroa, while rolling his eyes, made an inappropriate remark during a meeting of personal trainers, stating that Plaintiff could not perform a

certain task because she "supposedly hurt her back."

38.  The same day, Figueroa approached Plaintiff and again ordered her to move the weights despite her medical restrictions.   When Plaintiff reminded Defendant Figueroa of her doctor's note, he responded that she should just leave (and not get paid) if she couldn't move weights.

39.  Plaintiff complained via e-mail on August 5, 2021 to Defendants' Human Resources Department regarding Defendant Figueroa's disclosure of her personal medical information with other employees.

40.  The next day, on August 6, 2021, Plaintiff saw an orthopedic surgeon who diagnosed her with an intercostal muscle strain and restricted her from working until further notice.

41.  The same day, Plaintiff communicated with Christopher Cooper of Defendants' HR department, and further complained about Defendant Figueroa's disclosure of her personal medical information with other employees, Defendant Figueroa's touching of his genitals, his inappropriate discussion about sex in connection with Plaintiff's client cancelling a session, and telling her to leave work because she required an accommodation (i.e., not lifting weights) because of her injury.   Cooper told Plaintiff to go to work for her floor hours and assured her that she would have proper accommodations.

42.   Cooper also apologized to Plaintiff, conceded that Defendant Figueroa's behavior was inappropriate, and told Plaintiff he would investigate and speak to her again in a week's time.   Despite Cooper's statements and assurances to Plaintiff, he never got back to Plaintiff about her complaints.

43.  Following Plaintiff's conversation with Cooper, she consulted with her physician and was advised that she could not work and that he would decide which accommodations were

appropriate and required for her.

44.     On August 6, 2021, Plaintiff went on leave due to her work-related injury.

45.     On September 15, 2021, Plaintiff received an e mail from Equinox/Defendants informing her that her employment was terminated.

46.     On September 16, 2021, Darren Emmanuel, the General Manager of the 53rd Street Equinox facility, and Cooper advised Plaintiff via e mail that they had reversed her termination.   Cooper and Emmanuel claimed to have misunderstood Plaintiff's doctor's note restricting her from working.

47.     On or about September 16, 2021, Copper e-mailed Plaintiff an application for disability leave and advised her to apply for it.

48.     Defendants, having previously become aware that Plaintiff's physician had filled out and forwarded incorrect disability forms, did not contact Plaintiff or her doctor to make necessary corrections. Following Plaintiff's protestations of discriminatory discharge, Defendants forwarded the correct forms to Plaintiff's doctors on September 21, 2021.

49.     On September 17, 2021, Plaintiff informed Cooper and Emmanuel that her doctor had deemed her still unable to return to work.  In response, despite his earlier assurance that he would secure appropriate accommodations for Plaintiff, he told her he could not be involved in her employment situation.

50.     To date, Plaintiff has not been paid for the pay period before she went on leave on August 6, 2021.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE ADA**
**(AGAINST DEFENDANTS TRC AND EQUINOX)**

51.     Plaintiff repeats, reiterates, and realleges each and every paragraph above as if said

paragraphs were more fully set forth herein at length.

52.    Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

53.    Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

54.    Plaintiff's disability (a back injury) is an impairment that substantially limits one or more of her major life activities within the meaning of § 12102(1)(A) of the ADA, including but not limited to, working.

55.    Plaintiff requested reasonable accommodations. Specifically, she requested, in accordance with her medical restrictions, not to lift weights, and subsequently, for an absence from work until such time as her doctor deemed her capable of returning to her position.

56.    Defendant was aware of Plaintiff's disabilities and need for the accommodation.

57.    Plaintiff is a qualified individual who could perform the essential functions of his employment with a reasonable accommodation as defined by§ 12111(8) of the ADA.

58.    Defendant did not make a good faith effort to accommodate Plaintiff's disability.

59.    All the accommodations that Plaintiff requested were reasonable.

60.    None of the accommodations that Plaintiff requested would have created undue hardship for Defendant.

61.   Defendant failed to communicate with Plaintiff meaningfully and in good faith concerning her disability and requested accommodations.

62.   Defendant discriminated against Plaintiff in violation of the ADA by refusing to accommodate her disability and terminating her employment because of her disability.

63.   Defendant knowingly and intentionally discriminated against Plaintiff because of her disability.

64.   Plaintiff suffered injuries as a result of Defendant's failure to reasonably accommodate her disability.

65.   Defendant's failure to accommodate Plaintiff's disability was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

66.   The ADA, 42 U.S.C. sec. (1) (C), also defines a disability as an individual regarded as having an impairment.

67.   42 U.S.C. sec (3) (A) provides that a person is regarded as having an impairment if the person establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

68.    Plaintiff was regarded by Defendants as having disabilities related to her back injury and/or her anorexia nervosa. Plaintiff was subjected to unlawful discrimination with regard to her perceived impairments.

69.   Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights under the ADA when it refused to provide a reasonable accommodation for her disability, and when it terminated her employment because of her perceived disability.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER THE ADA**
**(AGAINST DEFENDANTS TRC AND EQUINOX)**

70.     Plaintiff repeats, reiterates, and realleges each and every paragraph above as if said

paragraph was more fully set forth herein at length.

71.     The ADA prohibits retaliation, interference, coercion, or intimidation against an employee

who engages in protected activity.

72.     42 U.S.C. § 12203 provides:

> Retaliation. No person shall discriminate against any individual
> because such individual has opposed any act or practice made
> unlawful by this chapter or because such individual made a
> charge, testified, assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this chapter.

> Interference, coercion, or intimidation. It shall be unlawful to
> coerce, intimidate, threaten, or interfere with any individual in the
> exercise or enjoyment of, or on account of his or her having
> exercised or enjoyed, or on account of his or her having aided or
> encouraged any other individual in the exercise or enjoyment of,
> any right granted or protected by this chapter.

73.     Plaintiff engaged in protected activity when she asked Defendant for reasonable

accommodations for her disabilities, and when she complained about the denial of her

rights.

74.     As a direct result of Plaintiff's request for a reasonable accommodation, Defendants

retaliated against Plaintiff by terminating her employment.

75.     Defendant's retaliatory conduct was the direct and proximate cause of Plaintiff's injuries,

damages, and losses.

76.     Defendant's conduct was with malice or reckless indifference to Plaintiff's federally

protected rights under the ADA.


**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(AGAINST DEFENDANTS TRC AND EQUINOX)**

77.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the

same force and effect as if more fully set forth herein.

78.     Title VII, 42 U.S.C. sec. 2000e-2 (a) (1) provides that it is an unlawful employment practice

for an employer to fail or refuse to hire or discharge any individual or to discriminate

against any individual with regard to compensation, terms, conditions or privileges of

employment because of such individual's race, color, religion, sex, or national origin.

79.     As hereinbefore set forth, Figueroa repeatedly engaged in inappropriate, harassing

comments and behavior towards Plaintiff, including but not limited to scratching his

genitals while speaking with her, engaging in inappropriate and disturbing conversation

about rape, and referring to sexual activity when informed of the cancellation of Plaintiff's

training session with a client.

80.     Said behavior created a hostile or offensive working environment for Plaintiff in violation

of the foregoing statute.

81.     Defendants TRC and Equinox knew or should have known of Figueroa's harassment of

Plaintiff and failed and/or refused to take prompt and effective remedial action.

82.     By reason of the foregoing, Plaintiff is entitled to damages including but not limited to

back pay, front pay, compensatory damages, and punitive damages.

**AS A FOURTH CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**

**(AGAINST DEFENDANTS  TRC AND EQUINOX)**

83.   Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

84.   42 U.S.C. sec. 2000e-3 (a) provides, in relevant part, that it is an unlawful employment practice for an employer to discriminate against any employee because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation proceeding, or hearing under this subchapter.

85.   As hereinbefore set forth, Plaintiff complained to Defendants' Human Resources Department about Figueroa's unlawful harassment.

86.   Shortly following Plaintiff's complaint, she was advised that her employment was terminated.

87.   The Defendants' conduct constituted unlawful retaliation pursuant to the above referenced statute, as a result of Plaintiff's having opposed Figueroa's unlawful behavior towards her.

88.   By reason of the foregoing, Plaintiff is entitled to damages including but not limited to back pay, front pay, compensatory damages, and punitive damages.

**AS A SIXTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE NYSHRL**
**(AGAINST ALL DEFENDANTS)**

89.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

90.   New York Executive Law § 296 (3) (a) provides, in relevant part, that:

> It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of

an employee, prospective employee or member in connection
with a job or occupation sought or held or participation in a
training program.

91.    Under the NYSHRL, Plaintiff was entitled to reasonable accommodations for her back
       injury/condition.

92.    As described above, Defendants discriminated against Plaintiff on the basis of her
       disabilities/ perceived disabilities in violation of the NYSHRL, by including but not limited
       to, subjecting her to working conditions that were contrary to her medical restrictions, and
       denying her the opportunity to work in an employment setting free of unlawful
       discrimination and harassment.   As a result of Defendants' unlawful discriminatory
       conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer,
       economic loss, for which she is entitled to an award of monetary damages and other relief.

93.    As a result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL,
       Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress,
       including, but not limited to, depression, humiliation, embarrassment, stress and anxiety,
       loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is
       entitled to an award of monetary damages and other relief.

94.    In addition to the foregoing, Figueroa's conduct towards Plaintiff amounted to unlawful
       sexual harassment in violation of the NYSHRL.

95.    Figueroa's conduct towards Plaintiff subjected Plaintiff to inferior terms, conditions and
       privileges of employment.

96.    Figueroa's unlawful conduct towards Plaintiff amounted to more than "petty slights or
       trivial inconveniences."

97.    Defendant Figueroa is individually liable to Plaintiff for the discriminatory actions against

Plaintiff because Figueroa had the authority to supervise and control employees' terms and conditions of employment.

98.    Alternatively, Figueroa aided and abetted Defendants' discriminatory conduct and is liable to Plaintiff under NYSHRL sec. 296 (6).

99.    Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of damages.

## AS A SEVENTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NYSHRL
### (AGAINST ALL DEFENDANTS)

100.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

101.    New York Executive Law § 296 (7) provides that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

102.    As described above, Plaintiff engaged in protected activities, including requesting a reasonable accommodation and making an internal complaint regarding Defendants' disability-related and sexual harassment discrimination.

103.    As described above, after Plaintiff engaged in activity protected by the NYSHRL, Defendants took adverse actions against Plaintiff by, *inter alia*, telling her that she should leave work, assigning her duties that violated her medical restrictions, and terminating her employment. Defendants' actions would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

104.    As a result of Defendants' retaliatory conduct in violation of the NYSHRL, Plaintiff has

suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

**AS AN EIGHTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER THE NYCHRL
(AGAINST ALL DEFENDANTS)**

105.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

106.    Plaintiff's back injury and/or anorexia nervosa were impairments and/or perceived impairments under the NYCHRL. The NYCHRL, NYC Admin Code sec. 8-107 (1) (a) prohibits discrimination because of the actual or perceived disability of any person.

107.    Plaintiff was entitled to reasonable accommodations under the NYCHRL to continue working or remain employed.

108.    As described above, Defendants discriminated against Plaintiff on the basis of her disabilities/perceived disabilities in violation of the NYCHRL by including but not limited to, subjecting her to working conditions that were contrary to her medical restrictions, and denying her the opportunity to work in an employment setting free of unlawful discrimination and harassment.

109.    Defendants also discriminated against Plaintiff by subjecting her to unlawful sexual harassment in the form of a hostile work environment including offensive remarks about sex, sexually explicit communications and gestures.

110.    As a result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered, and

continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

111.   Defendant Figueroa is individually liable for discriminatory conduct against Plaintiff under sec. 8-107(a) of the NYCHRL.

112.   As a result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

113.   Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

**AS A NINTH CAUSE OF ACTION**
**FOR RETALIATION UNDER THE NYCHRL**
**(AGAINST ALL DEFENDANTS)**

114.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

115.   Plaintiff's back injury and/or anorexia nervosa were impairments and/or perceived impairments under the NYCHRL. The NYCHRL, NYC Admin Code sec. 8-107 (1) (a) prohibits discrimination because of the actual or perceived disability of any person.

116.   Plaintiff was entitled to reasonable accommodations under the NYCHRL to continue working or remain employed.

117.   Plaintiff was entitled to be free from sexual harassment under the NYCHRL.

118.   Defendants unlawfully retaliated against Plaintiff because she opposed discriminatory practices prohibited by the NYCHRL, by complaining to Defendants about discrimination

towards her on the basis of her disabilities, refusal to reasonably accommodate her disabilities, and about Figueroa's sexual harassment of her.

119.   As a result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

120.   Defendant Figueroa is individually liable for discriminatory conduct against Plaintiff under sec. 8-107(a) of the NYCHRL.

121.   As a result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

122.   Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

**AS A TENTH CAUSE OF ACTION**
**FAILURE TO PAY MINIMUM WAGE UNDER THE FLSA**
**(AGAINST DEFENDANT EQUINOX)**

123.   Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

124.   The FLSA requires covered employers, such as Defendant, to pay all non-exempt employees the prevailing minimum wage for all hours worked.  Plaintiff was not exempt from the requirements that Defendant pay them the prevailing minimum wage under the FLSA.

125.   As described above, Defendant is an employer within the meaning of the FLSA.

126.  Defendant did not pay Plaintiff the prevailing minimum wage for all hours worked for Defendant.

127.  The foregoing conduct of Defendant constitutes willful violations of the FLSA.

128.  Defendant's violations of the FLSA have significantly damages Plaintiffs and entitles her to recover the total amount of her unpaid wages, an additional equal amount in liquidated damages, and attorneys' fees and costs.

**AS AN ELEVENTH CAUSE OF ACTION**
**FAILURE TO PAY MINIMUM WAGE UNDER THE NYLL**
**(AGAINST DEFENDANT EQUINOX)**

129.  Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

130.  NYLL § 652 (1)(b) requires covered employers, such as Defendant, to pay all non-exempt employees the prevailing minimum wage for all hours worked. Plaintiff was not exempt from the requirement that Defendant pay her the prevailing minimum wage under the NYLL.

131.  As described above, Defendant is an employer within the meaning of the NYLL.

132.  During Plaintiff's employment with Defendant, Defendant willfully and intentionally failed to pay Plaintiff the prevailing minimum wage for certain hours worked for Defendant.

133.  As a result of Defendant's failure to pay Plaintiff the prevailing minimum wage for all hours worked, Defendant violated the NYLL.

134.  Plaintiff is entitled to at least minimum wage for all hours worked.

135.  By failing to pay her any wages for 30 days of work, Defendant made deductions from the wages of Plaintiff other than those authorized under NYLL § 193.

136. The foregoing conduct of Defendant constitutes willful violations of the NYLL.

137. Defendant's violations of the NYLL have significantly damaged Plaintiff and entitle her to recover the total amount of her unpaid minimum wage, an additional amount in liquidated damages, attorneys' fees, costs, and interest. NYLL §§ 198.1-a and 663(1).

**AS A TWELFTH CAUSE OF ACTION**
**FAILURE TO MAKE TIMELY PAYMENT OF WAGES UNDER THE NYLL**
**(AGAINST DEFENDANT EQUINOX)**

138. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

139. Defendant failed and refused to timely pay Plaintiff her earned wages, in violation of NYLL § 191.

140. Due to Defendant's NYLL violations, Plaintiff is entitled to liquidated damages, reasonable attorneys' fees and costs.

**JURY DEMAND**

141. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the ADA, Title VII, the NYSHRL and the NYCHRL, in that Defendants discriminated and retaliated against Plaintiff on the basis of her sex/gender and disabilities/perceived disabilities;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and retaliation, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury,

distress, pain and suffering and injury to her reputation in an amount to be proven;

D.      Awarding Plaintiff punitive damages;

E.      Awarding Plaintiff liquidated damages on her FLSA and NYLL claims;

F.      Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the

         prosecution of the action;

G.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

         proper to remedy the Defendants' unlawful employment practices.


Dated: Garden City, New York
         November 4, 2022

                                             **PHILLIPS & ASSOCIATES,**
                                             **ATTORNEYS AT LAW, PLLC**

                                   By:      _____/s/_____
                                             Joshua M. Friedman, Esq.
                                             *Attorneys for Plaintiff*
                                             585 Stewart Ave, Suite 410
                                             Garden City, New York 11530
                                             T: (212) 248-7431
                                             F: (212) 901 - 2107
                                             jfriedman@tpglaws.com